UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| SCOTT D. WEBSTER,<br><br>    Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br><br>Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. 13-2199 |

REPORT AND RECOMMENDATION

  Plaintiff Scott D. Webster seeks review under 42 U.S.C. § 405(g), of the Social Security Administration's denial of his application for disability insurance benefits. The parties have filed cross motions for summary judgment. For the reasons explained below, the Court recommends that Plaintiff's Motion for Summary Judgment **(#17)** be **GRANTED**, Defendant's Motion for Summary Judgment **(#21)** be **DENIED**, and that this case be remanded under Sentence Four of § 405(g) for further proceedings.

        I.  Background

  On October 29, 2010, Plaintiff applied for Disability Insurance Benefits with an alleged onset date of March 5, 2010. His application was denied initially on December 29, 2010, and upon reconsideration on March 25, 2011. On February 29, 2012, Plaintiff, represented by a non-attorney representative, appeared for a hearing before an Administrative Law Judge (ALJ), during which Plaintiff, a medical expert, and a vocational expert testified.

  On June 29, 2012, the ALJ issued an unfavorable decision. (R. 6-24.) The ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, status post laminectomy, diabetes mellitus, optic neuritis, obesity and depression. The ALJ determined that Plaintiff's impairments did not meet or medically equal the listings and that Plaintiff retained the residual functional capacity (RFC) to perform

> "sedentary work as defined in 20 CFR 404.1567(b) except [Plaintiff] can lift and or carry 10 pounds frequently and 20 pounds occasionally. He can sit for 6 hours

in an 8 hour workday and can stand/walk for 2 hours in an 8 hour workday. [Plaintiff] requires a sit/stand option at will but can remain on task. [Plaintiff] can never climb ladders, ropes or scaffolds and can occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. He should avoid concentrated exposure to temperature extremes and all exposure to unprotected heights, and moving or dangerous machinery. [Plaintiff] can understand, carry out and remember unskilled simple, routine and repetitive tasks, but he should avoid fast paced work."

(R. 13.) The ALJ reasoned that Plaintiff could not return to his past relevant work as a merchandise deliverer, customer service provider, service technician, and fork lift operator, but found that jobs exist in significant numbers in the national economy that Plaintiff can perform. Therefore, the ALJ found Plaintiff not disabled. The ALJ's ruling became the Commissioner's final decision when the Appeals Council denied review.

Plaintiff argues the ALJ erred when (1) assessing physicians' opinions; (2) failing to properly evaluate Plaintiff's need to change positions; (3) discrediting Plaintiff's testimony; and (4) not properly assessing Plaintiff's fatigue.

## II. Standard of Review

In reviewing an ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's findings with the Court's own assessment of the evidence. *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989). Instead, the Court must affirm the decision to deny benefits if the ALJ correctly applied the law and supported the decision with substantial evidence. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Stated differently, if reasonable minds could differ as to whether Plaintiff is disabled, the Court must uphold the ALJ's decision to deny benefits. *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996). Importantly, in order for the Court to evaluate the ALJ's analysis, the ALJ must build a "logical bridge from the evidence to his conclusion." *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

## III. Discussion
### A. Physicians' Opinions

Plaintiff first argues the ALJ erred by not mentioning two treating physicians' opinions, mentioning only one statement from two other treating physicians' opinions, and failing to weigh the opinions as required by the regulations.

When evaluating a physician's opinion, an ALJ is required to consider whether 1) the physician examined the claimant; 2) the physician treated the claimant, with attention to the length and nature of the treating relationship; 3) relevant evidence supports the opinion; 4) the opinion is consistent with the record as a whole; 5) the physician is a specialist; and 6) any other factors tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c). A treating physician's opinion warrants special deference and receives "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). However, "once well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight and becomes just one more piece of evidence for the ALJ to consider." *Bates v. Colvin*, 736 F.3d 1093, 1099-1100 (7th Cir. 2013) (internal quotation marks omitted). If the ALJ does not give the treating physician's opinion controlling weight, the ALJ must give "good reasons" for the weight given to the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2).

Plaintiff first argues that the ALJ did not mention or assess the opinion from treating specialist Dr. Ahmad. However, Plaintiff cites only to a one-page form filled out by Dr. Ahmad on February 2, 2012, where Dr. Ahmad indicated that Plaintiff's pain was "disabling to the extent that it would prevent the patient from working full time at even a sedentary position." Pursuant to 20 C.F.R. § 404.1527(d), Dr. Ahmad's conclusion that Plaintiff's pain was disabling was not a medical opinion, but instead was a determination of disability, an issue reserved to the Commissioner. Therefore, the ALJ did not err by failing to mention or address Dr. Ahmad's findings.

Next, Plaintiff contends that the ALJ erred in failing to mention or analyze the May and November 2011 detailed functional capacity opinions from treating physician Dr. Torres. In her "physical capacities evaluation," Dr. Torres found that Plaintiff was (1) able to stand/walk for

3

less than one hour total in an eight hour workday, (2) unable to lift/carry more than five pounds, (3) experiencing fatigue due to sleep apnea, and (4) moderately limited with mental functioning in five areas. (R. 816-22.) The ALJ considered Plaintiff's care with Dr. Torres in November 2011 and noted only that Plaintiff reported worsening pain and that Dr. Torres reported that Plaintiff appeared depressed. (R. 15.) The ALJ also referenced Dr. Torres's report from May 2011, and acknowledged Dr. Torres's finding that Plaintiff was unable to perform even sedentary work. (R. 16.) The ALJ did not discuss or consider the remaining portions of Dr. Torres's seven page evaluations. The ALJ gave Dr. Torres's opinion "little weight" because Dr. Torres's treatment records did not report Plaintiff's inability to concentrate. In reaching this conclusion, however, the ALJ did not fully consider the seven page physical capacities evaluations created by Dr. Torres in May 2011 and November 2011.

Plaintiff also notes that the ALJ failed to adequately consider the opinion of Dr. Tanlin, another treating physician. Like Dr. Torres, Dr. Tanlin opined that Plaintiff's pain was so severe that it would prevent Plaintiff from working full time even at a sedentary position. (R. 747-48.) As with Dr. Torres's opinion, the ALJ gave Dr. Tanlin's opinion little weight as it did not report Plaintiff's inability to concentrate. (R. 16.)

As noted, the ALJ must give "good reasons" for not giving a treating physician's opinion controlling weight, 20 C.F.R. § 404.1527(c)(2). By failing to mention or address the physical capacities evaluations provided by Dr. Torres and Dr. Tanlin, the ALJ failed to provide "good reason" for not giving Dr. Torres and Dr. Tanlin's opinions controlling weight as treating physicians. The only reason noted for dismissing the doctors' testimony was that they did not report Plaintiff's inability to concentrate. It is unclear how this alone justifies the ALJ's failure to address the physical capacities evaluations performed by Dr. Torres and Dr. Tanlin.

The Seventh Circuit has said that the ALJ "must confront the evidence that does not support his conclusion and explain why it was rejected." *Zurawski v. Halter*, 245 F.3d 881, 888-89 (7th Cir. 2004). Dr. Torres & Dr. Tanlin's physical capacities evaluations directly conflict with the ALJ's RFC finding. Dr. Torres concluded that Plaintiff was unable to sit/stand for even one hour during an eight hour day and that Plaintiff was limited to lift/carry zero to five pounds

4

occasionally during the day. Contrarily, the ALJ concluded that Plaintiff was able to sit for six hours in an eight hour day (with a sit/stand option) and that Plaintiff could lift/carry ten pounds frequently and twenty pounds infrequently. Both of these conclusions are directly at odds with the opinions of the treating physicians and the ALJ erred in failing to consider the reports or give adequate reasoning for why they were rejected. This case presents a similar concern as raised by the Seventh Circuit in *Zurawski*, where the court was "unable to tell whether the ALJ investigated "all avenues" that relate to [the plaintiff's] complaints of pain because her decision offers no clue as to whether she *examined* the full range of medical evidence as it relates to his claim." *Id*. at 245 F.3d 888. Therefore, the Court recommends that the ALJ be directed to consider the physical capacities evaluations performed by Dr. Torres and Dr. Tanlin upon remand and either reconsider Plaintiff's claim in light of the doctors' findings or provide good reason for rejecting the opinions.

### B. Plaintiff's Need to Change Positions

Plaintiff contends the ALJ erred in failing to properly evaluate Plaintiff's need to change positions. Plaintiff makes three arguments: (1) the ALJ's decision includes internal inconsistencies; (2) the ALJ failed to explain his conclusion that Plaintiff could stay on task while he changed positions; and (3) the ALJ impermissibly relied on vocational expert evidence.

With regards to Plaintiff's first argument, the ALJ concluded that Plaintiff could sit for six hours in an eight hour workday and that Plaintiff required a sit/stand option at will but could remain on task. Plaintiff's motion states that the ALJ also found that that "the record did not support sitting limitations" and that these two conclusions were inconsistent. (Pl. Br. 18.) However, the ALJ actually found that "[t]here is nothing in the record that would prevent [Plaintiff] from sitting for six hours or performing the other limitations identified in the residual functional capacity assessment." (R. 16). As detailed in the RFC, the ALJ recognized that Plaintiff would need an unlimited sit/stand option within these six hours of sitting during the workday. Plaintiff's argument regarding the ALJ's inconsistency is therefore unpersuasive.

Plaintiff's contention that the ALJ failed to explain his conclusion that Plaintiff could remain on task while changing position is also unconvincing. No medical evidence was

5

presented to the ALJ showing that Plaintiff would be unable to stay on task while changing from sitting to standing.

Finally, Plaintiff argues that the ALJ impermissibly relied on the vocational expert's testimony as it was contrary to Social Security Ruling 96-9p, which provides that when the need for a sit/stand option that cannot be accommodated by scheduled breaks and lunch periods, the occupational base of available jobs will be "eroded." However, Plaintiff fails to note that the ALJ concluded that Plaintiff's sit/stand option could in fact be accommodated by scheduled breaks and lunch periods. Therefore, Plaintiff's citation to Social Security Ruling 96-9p is unrelated to the ALJ's conclusion as it stands. At the same time, the ALJ's conclusion that Plaintiff can sit for six hours in an eight hour day with an at will sit/stand option may need to be reconsidered upon remand with the ALJ's reconsideration of Dr. Torres's evaluations.

### C. Credibility

Plaintiff also argues that the ALJ failed to evaluate Plaintiff's credibility in accord with Social Security Ruling 96-7p when the ALJ dismissed Plaintiff's symptoms based on the medical record. The ALJ concluded that the Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC assessment]." (R. 15.) The ALJ noted that Plaintiff's "allegations and testimony of very limited walking, standing and sitting is inconsistent with the record" and that "[t]here is nothing in the record that would prevent [Plaintiff] from sitting for 6 hours or performing the other limitations identified in the residual functional capacity assessment." (R. 16.) As when determining Plaintiff's RFC assessment, the ALJ did not consider the detailed functional capacity opinions provided by Dr. Torres and Dr. Tanlin or give good reason for his failure to do so. Dr. Torres and Dr.Tanlin's opinions find that Plaintiff's limitations would prevent him from sitting for 6 hours and from performing several other limitations identified in the ALJ's RFC (such as Plaintiff's lift/carry limit). Therefore, the Court recommends that the ALJ be directed to reconsider this finding in light of the Court's instruction to address Dr. Torres and Dr. Tanlin's detailed functional capacity opinion, to the extent that it is consistent with Plaintiff's statements concerning his limitations.

### D. Plaintiff's Fatigue and Social Security Ruling 96-8p

Finally, Plaintiff contends that the ALJ erred by not assessing Plaintiff's fatigue as required by Social Security Ruling 96-8p. The Policy Interpretation of Social Security Ruling 96-8p provides that "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p *7. The ALJ found that Plaintiff's sleep apnea did not cause more than a minimal effect on Plaintiff's ability to perform work activity as Plaintiff's sleep apnea was controlled by the use of a C-PAP machine. (R. 11.) In contrast with this conclusion, Dr. Torres reported that Plaintiff suffered from fatigue that was "disabling to the extent that it prevents [Plaintiff] from working full time, even in a sedentary position." (R. 817.) The ALJ, therefore, should be required to revisit her conclusion regarding Plaintiff's fatigue in light of Dr. Torres's opinions.

### IV. Conclusion

For these reasons, the Court recommends that Plaintiff's Motion for Summary Judgment **(#17)** be **GRANTED**, Defendant's Motion for Summary Judgment **(#21)** be **DENIED**, and that this case be remanded under Sentence Four of § 405(g) for further proceedings. The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 19th day of December, 2014.

s/DAVID G. BERNTHAL
UNITED STATES MAGISTRATE JUDGE